**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| GIRARD STREET INVESTMENT HOLDINGS LLC,<br><br>*Plaintiff/Judgment Creditor/Garnishor*,<br><br>v.<br><br>PDV CHALMETTE, LLC;<br>CITGO PETROLEUM CORPORATION; and<br>LDC SUPPLY INTERNATIONAL, LLC,<br><br>*Garnishees*,<br><br>PDVSA PETRÓLEO, S.A.,<br><br>*Defendant/Judgment Debtor*. | No. 4:25-mc-02337 |

**PURPORTED GARNISHEES' SUPPLEMENTAL BRIEF IN OPPOSITION TO GIRARD STREET'S MOTION FOR CONDITIONAL WRIT OF GARNISHMENT**

## INTRODUCTION

At the September 28 hearing, Girard Street made clear that it wants a "conditional writ of garnishment" issued and served now so that "as soon as the green flag comes up, we retain our position of first in time, first in right." Tr. at 19:7–11. And it wants to compel Garnishees to answer the writ under oath, which it incorrectly calls an "interrogatory" that "OFAC does not preclude." *Id.* at 18:3–13. The Venezuela Sanctions Regulations prohibit both of these transactions without a specific license, which Girard Street concedes it does not have. *Id.* at 5:14–15. And Texas law does not recognize or allow the novel remedies Girard Street asks this Court to create. Garnishees do not repeat their opposition. *See* Dkt. 6. This brief addresses the Court's questions at the hearing, the developments since briefing closed, and the relief Girard Street proposed for the first time in reply. Garnishees join the supplemental brief of PDVSA Petróleo, S.A. ("PPSA") on subject-matter jurisdiction, Dkt. 33, which the Court must resolve first. If the Court reaches the merits, the motion should be denied.

## BACKGROUND

The Court asked about the nature and purpose of the OFAC sanctions. Tr. at 24:6–18. The Office of Foreign Assets Control ("OFAC") administers sanctions the President imposes under the International Emergency Economic Powers Act ("IEEPA"). When the President "blocks" property, it is frozen where it sits and "may not be transferred, paid, exported, withdrawn, or otherwise dealt in" unless OFAC authorizes the transaction, by a general license available to all or a specific license issued to an applicant. E.O. 13884 § 1(a), 84 Fed. Reg. 38,843 (Aug. 7, 2019); 31 C.F.R. §§ 591.201, 591.306. Blocking is not a collective-creditor proceeding. Its purpose is "to

put control of foreign assets in the hands of the President." *Dames & Moore v. Regan*, 453 U.S. 654, 673 (1981) (quoting *Propper v. Clark*, 337 U.S. 472, 493 (1949)).[1]

In 2019, the President designated PDVSA and blocked all property of the Government of Venezuela, including PDVSA and every entity it owns or controls, among them PPSA and Garnishees. E.O. 13884 §§ 1(a), 6(d); 31 C.F.R. § 591.406. OFAC's regulations expressly cover judicial enforcement: "[n]otwithstanding the existence of any general license," enforcement of any judgment "through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect" blocked property "is prohibited unless authorized pursuant to a specific license," and unlicensed process is "null and void." 31 C.F.R. §§ 591.202(e), 591.407. Girard Street acknowledged as much when it filed. Dkt. 2 at 1.

Since briefing closed, the Executive Branch has loosened other Venezuela sanctions while preserving that prohibition every time. In January, the President found that "the threat of attachment or the imposition of other judicial process" against Venezuelan funds held by the United States "will materially harm the national security and foreign policy of the United States," declared such process "null and void," and found that those funds "do not constitute the property of any private party, including judgment creditors." E.O. 14373 §§ 1, 3(a), 4(a), 91 Fed. Reg. 2045 (Jan. 15, 2026). In March, OFAC restated that a specific license is required for enforcement "through execution, garnishment, or other judicial process" "[n]otwithstanding the existence of any general licenses." OFAC FAQ 1246 (Mar. 18, 2026). In May and September, OFAC authorized debt-restructuring advice to PDVSA entities and broad oil-sector dealings with them, each time excluding enforcement "through execution, garnishment, or other judicial process."

[1] The Treasury described PDVSA's designation the same way: it "will help prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela." Press Release, U.S. Dep't of the Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.

OFAC Gen. License 58 ¶ (b)(3) (May 5, 2026); OFAC Gen. License 52C ¶ (d)(2) (Sept. 14, 2026). Girard Street agrees that despite "many changes to the Venezuelan Sanctions Regime," OFAC's specific-license requirement for garnishment "has not changed." Dkt. 19-1 at 2.

## ARGUMENT

### I. A Place in Line Is the Interest the OFAC Regulations Forbid, and Allocation Among Creditors Belongs to the Executive

The Venezuela Sanctions Regulations prohibit any "act or transaction . . . the purpose, intent, or effect of which is to create . . . any right, remedy, power, privilege, or interest with respect to any property" that is blocked, including "the fulfillment of any condition," 31 C.F.R. § 591.310, and "property" includes interests "present, future, or contingent," *id.* § 591.309. OFAC said what that means for creditors when it first issued FAQ 808 in December 2019: the license requirement "includes the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property," and a license is required for measures such as "Attaching," "Encumbering," and "Freezing."[2] *Koch Minerals Sàrl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 43–44 (D.D.C. 2020) (quoting OFAC FAQ 808 (Dec. 9, 2019)).[3]

Girard Street's purpose is a place in line. Its motion said so, Dkt. 3 ¶¶ 12–13, and its counsel said so at least three times at the hearing: the point is that "as soon as the green flag comes up, we retain our position of first in time, first in right," Tr. at 19:7–11; that "[i]f the Court here or a Court in Texas found Judge Stark's analysis persuasive, then, yes, we would have priority on our filings," *id.* at 22:7–9; and that without the writ "[s]omeone else can just jump the line," *id.* at 26:18–27:3.

[2] OFAC revised FAQ 808 on May 1, 2023, the day it licensed the Delaware Clerk in *Crystallex* and released FAQ 1123. The revision added that creditors "may file for writs of attachment" without authorization and removed the illustrative list, but it retained the specific-license requirement for "garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property" and continues to direct readers to §§ 591.309 and 591.310, which define the prohibition to reach contingent interests and "the fulfillment of any condition." OFAC FAQ 808 (updated May 1, 2023).

[3] *Koch* held only that converting an award to a judgment requires no license because it "does not reach into PdVSA's pockets." 514 F. Supp. 3d at 44. A served writ does.

A device whose function is to secure priority in blocked receivables upon the lifting of sanctions is a contingent interest in that property created by judicial process. That is what §§ 591.309 and 591.310 forbid and what § 591.202(e) declares null and void. Girard Street's assurance that the writ "does not create priority," Tr. at 26:23–24, cannot be squared with its own explanation of why it wants one. The Court saw the problem: "what I do here might actually begin to affect priority; and I don't think that's right." *Id.* at 26:5–6.

Girard Street's principal authority is a series of orders Judge Stark entered in the District of Delaware, where creditors of Venezuela and PDVSA sought writs of attachment against assets of PDVSA. Dkt. 3 ¶ 12. Those "conditional writs" were orders directing the Clerk "*not* to issue the writ of attachment until the Court has received evidence that [OFAC] has authorized the issuance and service of such writ." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151, 2023 WL 4826467, at *3 (D. Del. July 27, 2023). No writ issued until OFAC licensed the Clerk, *id.* at *4, and until then, as the Third Circuit put it, such a creditor "still lacks an attachment," *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 23-1117, 2024 WL 3342444, at *5 (3d Cir. July 9, 2024). Girard Street reads those orders as approving the conditional relief it seeks here, but the Delaware court's reasoning rested on the opposite premise. Judge Stark held that authorizing the eventual issuance of writs was not a prohibited transfer because "the judgment creditors admit that the requested relief will not establish priority," and "[t]he lack of any priority benefit underscores that the requested relief does not amount to a prohibited transfer." *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290, 2022 WL 611563, at *6 (D. Del. Mar. 2, 2022) ("*OIEG*"). He likewise read FAQ 808 to "indicate[] that a specific license would be required to attach any blocked property" and found it not implicated only because "the requested relief stops short of any attachment." *Id.* at *7. Girard Street seeks exactly the benefit whose absence made the Delaware orders permissible.

Texas law independently precludes the benefit Girard Street seeks. Where writs were served on a debt that could not then be garnished, the court of appeals held that the writs "would reach no property and were thus dead," and that "using the dry writs as a method of establishing a priority would be questionable." *Com. Credit Corp. v. U.S. Fire Ins. Co.*, 630 S.W.2d 651, 652–53 (Tex. App.—Houston [1st Dist.] 1981, no writ). The Fifth Circuit rejected the same plea in *JGM Holdings, L.L.C. v. T-Mobile USA, Inc.*, where the creditor argued that dismissal was unfair because "a diligent judgment creditor is at risk of losing priority," and the court affirmed because courts "have no power to extend the benefits of garnishment beyond the relief available under statute." 568 F. App'x 316, 319, 321 (5th Cir. 2014) (per curiam) (citations omitted).

Girard Street falls back on the argument that the writ would at least record its diligence for some future court. Tr. at 18:25–19:11. That argument fails on Girard Street's own concessions. Girard Street agreed that the writ "is *in personam*" and that "[i]t is not clear that this Court would ultimately decide priority among the creditors[]." *Id.* at 21:10–14. A writ that binds no property and that this Court will not enforce gives Girard Street no relief here. And the court that entered Girard Street's judgment has already assessed its diligence, finding that plaintiffs failed to use the *Crystallex* remedy "due to their own lack of diligence." *G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*, 788 F. Supp. 3d 616, 621–22 (S.D.N.Y. 2025), *appeal docketed*, No. 25-1789 (2d Cir. 2025).

The Court asked whether OFAC's purpose is "to achieve a level playing field for all creditors" or to "make judgments among creditors." Tr. at 24:9–12. The Executive has reserved that judgment to itself. Blocking puts "control of foreign assets in the hands of the President," and IEEPA does not permit "individual claimants throughout the country to minimize or wholly eliminate this 'bargaining chip' through attachments, garnishments, or similar encumbrances on property." *Dames & Moore*, 453 U.S. at 673–74 (citation omitted). Attachments obtained against

blocked property under a sanctions regime are "'revocable,' 'contingent,' and 'in every sense subordinate to the President's power under the IEEPA.'" *Id.* at 674 n.6. The Fifth Circuit has applied the same principle to judgment creditors who, unlike Girard Street, had a statutory right under the Terrorism Risk Insurance Act to execute against blocked assets. The court held that they could not reach IEEPA-blocked funds that OFAC had licensed the government to restrain for criminal forfeiture, observing that the statute "imposes no obligation on the President to maintain [blocked] funds for future attachment [by judgment creditors]." *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 685–87 (5th Cir. 2013) (citation omitted). OFAC has said it "is committed to fair and equivalent treatment of potential creditors" in its licensing decisions. OFAC FAQ 1123 (May 1, 2023). Whether OFAC ultimately treats creditors equally, by date, or otherwise, is up to OFAC. Girard Street applied for a license over a year ago. Dkt. 3-1 ¶ 6. OFAC's silence, whatever its reason, is not authority for a court to create the interest OFAC has not granted.

## II. Girard Street's Recast Writ Is Not a Texas Writ

Rule 69(a) confines this Court to the enforcement procedures Texas provides. Fed. R. Civ. P. 69(a)(1); *see Licea v. Curacao Drydock Co.*, 952 F.3d 207, 211–12 (5th Cir. 2015). As this Court has held, when a judgment creditor "has not identified a legal basis" in Texas law for the device it proposes, the Court "does not have the authority under Rule 69(a)" to supply one, however "sympathetic" the creditor's collection difficulties. *Valero Energy, Ltd. v. Clyde Bergemann US, Inc.*, No. 4:21-CV-02034, 2024 WL 3572950, at *1–2 (S.D. Tex. July 29, 2024) (Ellison, J.); *see Brown v. Byer*, No. 92-1855, 1993 WL 210211, at *2 n.12 (5th Cir. June 9, 1993) (per curiam). Texas courts, in turn, "do not have the equitable power to expand the purely statutory garnishment remedy." *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 424 (5th Cir. 2006). Girard Street conceded at the hearing that there is no "good case in Texas that says . . . a conditional order of garnishment is present in these circumstances." Tr. at 16:14–21.

Girard Street's solution, offered for the first time in reply, is a writ whose service "has no operative effect" until a license issues, or whose service is "deferred." Dkt. 16 at 2–3, 11, 15. Nothing in Texas law provides for such a remedy. Texas fixes the effect of a writ by statute: "After service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt to the defendant," Tex. Civ. Prac. & Rem. Code § 63.003(a), and a lien arises "from the date of the service of the writ," *Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187, 1192 (5th Cir. 1992) (citation omitted). Girard Street's contention that the Rule 661 form "*may* be used . . . but does not *mandate* that precise language," Dkt. 16 at 12, overlooks that "the Texas Rules of Civil Procedure have the same force and effect as statutes," *Zeecon Wireless Internet, LLC v. Am. Bank of Tex., N.A.*, 305 S.W.3d 813, 817 (Tex. App.—Austin 2010, no pet.), and that the form's no-pay command is "substantively identical" to § 63.003(a), *Palandjoglou v. United Nat'l Ins. Co.*, 821 F. Supp. 1179, 1186 n.6 (S.D. Tex. 1993). A court cannot issue a Texas writ and switch off its statutory consequences.

Garnishment is quasi in rem. *Zeecon*, 305 S.W.3d at 816. Service gives the court jurisdiction over the debt, and "the garnishee effectively becomes the receiver of the court, holding the property until it is determined who is entitled to it." *Id.*; *see Licea*, 952 F.3d at 214–15 (directing dismissal of garnishment against garnishees that had not been "effectually served with process," because without jurisdiction over the garnishees the court had none "over the debt via the persons of the Garnishees"); *Wrigley v. First Nat'l Sec. Corp.*, 104 S.W.3d 252, 256–57 (Tex. App.—Beaumont 2003, no pet.). A writ whose service is declared to have no effect places nothing in the court's custody and gives the Court nothing to adjudicate. If instead the writ compels an answer, as Girard Street now desires, service has had its effect and the freeze attaches with it in violation of OFAC regulations.

Texas law also requires the judgment debtor to be served "as soon as practicable after service of the writ on the garnishee" with a writ that must display a notice that its "money or property has been frozen or seized." Tex. R. Civ. P. 663a (as amended eff. May 1, 2022). That service is "an essential part of acquiring jurisdiction over the res" and cannot be waived. *Zeecon*, 305 S.W.3d at 820. Girard Street proposes not to serve PPSA until a license issues. Dkt. 16 at 12–13, 15. A proceeding structured that way never acquires jurisdiction over the debt, and the required notice would be false.

The Delaware court on which Girard Street relies refused precisely this alternative. ConocoPhillips asked Judge Stark "to immediately issue a writ of attachment while delaying delivery and service of the writ until after OFAC grants a specific license." *OIEG*, 2022 WL 611563, at *8. The court declined, finding "the more prudent approach is to delay issuance of any writ of attachment until OFAC grants a specific license or the sanctions regime materially changes." *Id.* at *9.

If, as Girard Street claims, the writ would have no effect until a license issues, then Girard Street is asking for an advisory opinion declaring what the Court would do upon a contingency that may never occur. Federal courts "do not issue advisory opinions which cannot provide binding relief." *In re Serta Simmons Bedding, LLC*, 125 F.4th 555, 576 (5th Cir. 2024).

## III. The Garnishee's Answer Is Part of the Writ, Not an Interrogatory

Girard Street told the Court that a writ "has two parts," that the sworn answer is an "interrogatory," and that "OFAC only impacts" the freeze. Tr. at 18:3–13, 20:2–5. Texas law recognizes no such division. The writ creates the duty to answer, and service of the writ triggers that duty. The writ "shall command the garnishee to answer under oath . . . what, if anything, he is indebted to the defendant, and was when the writ was served," Tex. R. Civ. P. 659, and a garnishee that "fails to file an answer to the writ of garnishment at or before the time directed in the writ"

faces "judgment by default . . . for the full amount of such judgment against the defendant," Tex. R. Civ. P. 667. No interrogatory exposes the respondent to a nearly $300 million judgment for failing to answer on time. Absent issuance and service of the writ, nothing in Texas law compels a garnishee to answer. And service is the very act the regulations forbid and the statute gives effect: a prohibited "transfer" includes "the issuance . . . of . . . any . . . judicial or administrative process or order, or the service of any garnishment," 31 C.F.R. § 591.310, and "[a]fter service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt to the defendant," Tex. Civ. Prac. & Rem. Code § 63.003(a). The answer Girard Street wants cannot be had without the act it concedes requires a license.

Girard Street's authorities do not say otherwise. Asked for support, it offered FAQ 808 and "the IEEPA statute itself." Tr. at 19:16–20:1. FAQ 808 says a license is not needed to "file for" a writ but "is required" for enforcement "through execution, garnishment, or other judicial process." It says nothing about answers to served writs. And IEEPA exempts the importation and exportation of "information or informational materials, including . . . publications, films, posters," etc., 50 U.S.C. § 1702(b)(3), not compelled answers to judicial process.

Nor does Texas law give a creditor a freestanding right to the sworn statement Girard Street seeks. "[B]y strict compliance with our garnishment statutes, a plaintiff in garnishment merely steps into the shoes of his debtor as against the garnishee, and may enforce, as against such garnishee, whatever rights the debtor could have enforced had such debtor been suing the garnishee directly." *Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1937). PPSA cannot compel Garnishees to pay it without a license, and it cannot demand a sworn accounting outside the statutory writ. Neither, then, can Girard Street.

Girard Street's own description of the writ as "*in personam*" shows why its "two parts" cannot be separated. Tr. at 21:12. A Texas garnishment "is operative *in personam* against the

garnishee to prevent him from paying the debt to the garnishment debtor and is operative *in rem* upon the *property of the defendant debtor in the hands of the garnishee*." *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 585 (5th Cir. 2006) (quoting *Westex*, 950 F.2d at 1192 n.7). The writ's in personam operation is the command not to pay, which is what Girard Street proposes to remove. Strip it away and what remains is a demand for information, which the law supplies through post-judgment discovery rather than garnishment. *See* Fed. R. Civ. P. 69(a)(2); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1405 (5th Cir. 1993).

**CONCLUSION**

The motion should be denied. Alternatively, it should be denied without prejudice to renewal upon issuance of a specific OFAC license.

Dated: October 5, 2026

Respectfully submitted,

By: /s/ *Nathan P. Eimer*
Nathan P. Eimer
Attorney-in-Charge
State Bar No. 24001478
S.D. Tex. No. 31213
neimer@eimerstahl.com
Daniel D. Birk (*pro hac vice*)
dbirk@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600

*Counsel for Purported Garnishees*
*CITGO Petroleum Corporation;*
*PDV Chalmette, LLC; and*
*LDC Supply International, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 5, 2026, a true and correct copy of **Purported Garnishees' Supplemental Brief In Opposition to Girard Street's Motion for Conditional Writ of Garnishment** was filed via the court's CM/ECF system, which will automatically serve a Notice of Electronic Filing to all registered users.

/s/ *Nathan P. Eimer*
Nathan P. Eimer