**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| GIRARD STREET INVESTMENT HOLDINGS LLC,<br><br>*Plaintiff/Judgment Creditor/Garnishor*,<br><br>v.<br><br>PDV CHALMETTE, LLC;<br>CITGO PETROLEUM CORPORATION; and<br>LDC SUPPLY INTERNATIONAL, LLC,<br><br>*Garnishees*,<br><br>PDVSA PETRÓLEO, S.A.,<br><br>*Defendant/Judgment Debtor*. | No. 4:25-mc-02337 |

# PURPORTED GARNISHEES' RESPONSE IN OPPOSITION TO GIRARD STREET'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR CONDITIONAL WRIT OF GARNISHMENT

## INTRODUCTION

Girard Street's supplemental brief says the order it seeks does not "prejudge priority," Dkt. 35 at 5, yet it warns that denial "could reset Girard Street's place in whatever priority line is ultimately established," *id.* at 9–10. A place in line is the whole point of the motion. Neither Texas law nor federal law allows that. Texas law gives a garnishor no place in line until the writ is served, which cannot be done here. And the Venezuela Sanctions Regulations forbid a court to create a contingent interest in blocked property before OFAC licenses it. Garnishees join PPSA's response on subject-matter jurisdiction, Dkt. 36, which the Court must resolve first.

## ARGUMENT

### I. Texas Law Gives a Garnishor No Interest Before Service, and the Regulations Forbid a Court to Create One Before a License

Girard Street calls a conditional writ a "preservative step," Dkt. 35 at 2, and warns that denial would "reset" its place in line, *id.* at 9–10. Both assume that a creditor can hold a place in line before the writ is served. Texas law says it cannot. The Texas Supreme Court held long ago that "[i]t is not upon the filing of a proper affidavit and issuance of a valid writ of garnishment that a creditor secures a right," because the debtor's power over the debt is withdrawn "only by proper service of a valid writ of garnishment." *Ins. Co. of N. Am. v. Friedman*, 11 S.W. 1046, 1047 (Tex. 1889). Neither filing nor issuance fixes priority: "a garnishor's rights are determined by priority in time and priority in time is determined by service of the writ." *Small Bus. Inv. Co. of Houston v. Champion Int'l Corp.*, 619 S.W.2d 28, 30 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ) (creditor whose application was on file, and whose garnishee had voluntarily answered, had no priority because no writ had been served); *accord Harrell v. Mexico Cattle Co.*, 11 S.W. 863, 865 (Tex. 1889). Garnishment is purely statutory and courts cannot enlarge it, *see* Dkt. 6 at 8–10; Dkt. 34 at 6–7, so there is no interest short of service to preserve.

And federal law forbids service. Girard Street's answer is that federal law "displaces" only "one element" of the Texas writ—the command not to pay—and that "[e]verything else in the Texas procedure remains intact." Dkt. 35 at 2. But the regulations prohibit the act that gives the Texas writ effect, "the issuance . . . of . . . any . . . judicial or administrative process or order, or the service of any garnishment," and they forbid any act "the purpose, intent, or effect of which is to create" an interest in blocked property, whether "present, future, or contingent," including by "the fulfillment of any condition." 31 C.F.R. §§ 591.309, 591.310; *see id.* § 591.202(e). Rule 69(a)(1) applies Texas procedure except where "a federal statute governs." Federal law provides that garnishment process may not issue or be served against blocked property without a license. Federal law therefore stops the Texas writ outright.[1] *See, e.g.*, *Clark v. Propper*, 169 F.2d 324, 327 (2d Cir. 1948) (judicial process is no exception to a blocking order, because "[t]o allow the exception would be to furnish a means of evasion by which the impact of freezing controls could be avoided by recourse to judicial proceedings"), *aff'd*, 337 U.S. 472 (1949).

Girard Street's own account of the relief it seeks confirms the point. It says the order is one a future court "may weigh or disregard," Dkt. 35 at 5, yet argues that "[u]nder the only priority rule a court has adopted in these circumstances," priority runs from the motion date, so denial "could reset" its place, *id.* at 9–10. An order sought so that a later court will rank Girard Street ahead of other creditors has the creation of an interest in blocked property as its "purpose, intent, or effect." 31 C.F.R. § 591.310. If it would have that effect, it creates the contingent interest the regulations forbid; if not, it binds no one and is an advisory opinion, which federal courts "do not issue." *In re Serta Simmons Bedding, LLC*, 125 F.4th 555, 576 (5th Cir. 2024); *see* Dkt. 34 at 8.

[1] Girard Street cites FAQs 1123 and 1124 as proof that OFAC does not oppose "preservative" steps. Dkt. 35 at 2. But both are non-enforcement statements, each confined to a single matter: FAQ 1123 to the *Crystallex* sale process and FAQ 1124 to steps preserving bondholder rights in the CITGO Holding shares pledged for the PDVSA 2020 bonds. They show OFAC drawing lines creditor by creditor, while Girard Street's own license application has gone unanswered for over a year. Dkt. 3-1 ¶ 6. In any event, § 591.202(e) voids unlicensed process whatever OFAC's enforcement posture.

## II. Neither Girard Street's Authorities nor Its Proposed Alternatives Create an Interest Before Service

Girard Street's principal argument is that this Court should do what the District of Delaware did for creditors seeking to attach PDVSA's shares in the *Crystallex* sale proceedings. Dkt. 35 at 1. But the orders it calls "conditional writs" did not actually issue or cause the marshal to serve any writs. Instead, they directed the Clerk "not to issue the writ of attachment until the Court has received evidence that [OFAC] has authorized the issuance and service of such writ." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151, 2023 WL 4826467, at *3 (D. Del. July 27, 2023); *see Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, No. 22-mc-68, D.I. 15 at 3 (D. Del. Apr. 28, 2022) (same). The motion-date priority rule came later. After OFAC licensed the Clerk to issue writs in May 2023, the court solicited separate briefing on priority and received "widely disparate" proposals. 2023 WL 4826467, at *1, *10. Exercising its discretion over the terms of the judicial sale it was conducting, it chose to rank creditors by the date of a motion for a writ "that is eventually granted." *Id.* at *1–2, *11. No appellate court has approved the priority ruling, and Girard Street concedes that it "binds no other court." Dkt. 35 at 5. Texas law ranks garnishors by service. *Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187, 1192 (5th Cir. 1992); *Champion*, 619 S.W.2d at 30. An order here would matter only if a future court chose to follow Judge Stark's approach over Texas law. In any event, Judge Stark issued no writ and fixed no creditor's priority until OFAC had licensed the writs of attachment and allowed the sale process to proceed. 2023 WL 4826467, at *3–4, *11. Girard Street has received no such license here. Tr. at 5:14–15.

Girard Street fares no better under Texas law. Its only Texas-law authority for a suspended freeze is *Matter of Bohart*, 743 F.2d 313 (5th Cir. 1984), which it reads as approving a writ that is switched off by an "external constraint" and later revived. Dkt. 35 at 3. But the suspension in *Bohart* came from the operation of Texas law, not any court order: the writs operated in full on

service, and they went dormant only because the underlying judgment was reversed and a Texas garnishment falls with the judgment on which it depends. 743 F.2d at 316, 319–21, 324. The Fifth Circuit called the creditor's proposal to keep the writs in force throughout the appeal "a sensible one" but held that "the present state of Texas law" did not permit it. *Id.* at 323–24. *Bohart* thus shows that courts in this circuit will not bend Texas garnishment law, which requires strict compliance. *See Lease Fin. Grp., LLC v. Childers*, 310 S.W.3d 120, 124 (Tex. App.—Fort Worth 2010, no pet.); Tr. at 16:6–13.

Girard Street's fallbacks—stayed service, an issue-later order, and an abeyance—appear nowhere in its motion or proposed order, Dkt. 3; Dkt. 3-2, and fail for at least two reasons. First, each is indefinite. A stay "hinged on completion of" an external proceeding "is manifestly 'indefinite,'" *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983), and a stay pending OFAC action, which Girard Street says can come with "no advance notice," Tr. at 19:3–4, or never come at all, is indefinite by that standard. Ninety-day status reports do not fix that problem.[2] Second, each alternative confers no interest in the garnished debt. An issued but unserved writ fixes no priority. *Champion*, 619 S.W.2d at 30; *Com. Credit Corp. v. U.S. Fire Ins. Co.*, 630 S.W.2d 651, 652–53 (Tex. App.—Houston [1st Dist.] 1981, no writ). And as Girard Street concedes, an abeyance "decides nothing," Dkt. 35 at 9. An order that decides nothing preserves nothing. Under Texas law, there is no place in line before service, so there is nothing to "reset."

### III. The Answer Cannot Be Severed from the Writ

Girard Street also argues that a writ compelling only a sworn answer alters no right in blocked property. Dkt. 35 at 6–7. But under Texas law, the duty to answer "does not exist until process has been served upon him in accordance with the requirements of the statute," *Friedman*,

[2] Girard Street's own authority for staying service, Dkt. 35 at 9, points the other way. The court there set a service deadline "to avoid delay" and required service "in conformity with Texas law." *Phila. Indem. Ins. Co. v. JJ Red Com. Roofing LLC*, No. 3:23-cv-2581, 2024 WL 749571, at *4 (N.D. Tex. Feb. 23, 2024).

11 S.W. at 1048, and "[w]ithout service, no control or custody is gained by the answer of the garnishee," *Champion*, 619 S.W.2d at 30.[3] Federal law forbids that service.[4]

Even if an order could stand in for service, what Girard Street describes is not a garnishment writ. A served writ has three statutory consequences: (1) the garnishee may not pay the debtor, Tex. Civ. Prac. & Rem. Code § 63.003(a); (2) the debtor must be notified that its property has been "frozen or seized," Tex. R. Civ. P. 663a; and (3) a garnishee that fails to answer faces a default judgment for the full amount of the debt, Tex. R. Civ. P. 667. Girard Street's writ would defer the first two until a license issues or sanctions are lifted, Dkt. 35 at 9, and its fix for the third is an order that no judgment, "including by default," may be entered against a Garnishee, *id.* at 7. What remains is a demand for information, which could be pursued, if available, through post-judgment discovery, not a novel writ unknown to Texas law. Fed. R. Civ. P. 69(a)(2); *see* Dkt. 34 at 8–10.[5]

**CONCLUSION**

The motion should be denied, or denied without prejudice to renewal upon issuance of a specific OFAC license.

---

[3] Girard Street reads the Rule 661 form as "three elements"—an answer date, a sworn statement of indebtedness, and the command not to pay—and says only the third requires a license. Dkt. 35 at 3. But the form is one writ, and the sworn statement depends on service just as much as the command not to pay. *See* Tex. R. Civ. P. 659. There is no answer to give until the writ has been served.

[4] Girard Street replies that sanctions, unlike a bankruptcy stay, give PPSA no "breathing spell" from litigation of its liability, so an answer may be compelled. Dkt. 35 at 6–7. But a garnishee's sworn answer is not litigation of PPSA's liability; it is a step in enforcement "through . . . garnishment," for which FAQ 808 says a license "is required."

[5] Nor is it true that Girard Street's requested relief "prejudices no one." Dkt. 35 at 6. Unlike an interrogatory answer, which ordinarily is not filed, Fed. R. Civ. P. 5(d)(1)(A), a garnishee's answer is a pleading filed with the court, Tex. R. Civ. P. 665, 667, and thus is a public accounting of intercompany payables and of Garnishees' knowledge of other PDVSA assets, available to every entrant in the "creditors' race . . . in Texas" Girard Street predicts. Dkt. 35 at 6. Garnishees would also bear the risk that a later court reads a served writ by its statutory terms rather than by the accompanying order and holds them liable for payments made to PPSA in the interim.

Dated: October 13, 2026

Respectfully submitted,

By: /s/ *Nathan P. Eimer*

Nathan P. Eimer
State Bar No. 24001478
S.D. Tex. No. 31213
neimer@eimerstahl.com
Daniel D. Birk (*pro hac vice*)
dbirk@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600

*Counsel for Purported Garnishees*
*CITGO Petroleum Corporation;*
*PDV Chalmette, LLC; and*
*LDC Supply International, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 13, 2026, a true and correct copy of **Purported Garnishees' Response in Opposition to Girard Street's Supplemental Brief in Support of its Motion for Conditional Writ of Garnishment** was filed via the court's CM/ECF system, which will automatically serve a Notice of Electronic Filing to all registered users.

*/s/ Nathan P. Eimer*
Nathan P. Eimer